**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| DANIEL JOSEPH MADRID, | § | |
|     PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-800-Y |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
|     DEFENDANT. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**
**AND**
**NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I.  STATEMENT OF THE CASE**

Plaintiff Daniel Joseph Madrid ("Madrid") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA").[1] Madrid applied for SSI in June 2007, alleging that his disability began on October 1, 2007.[2] (Tr. 13, 86-92.)

---

[1] In his decision denying Madrid benefits, the Administrative Law Judge ("ALJ") states that Madrid filed claims for SSI *and* a period of disability and disability insurance benefits. However, Madrid, in his brief, indicates that he only filed a claim for SSI. (Plaintiff's Brief ("Pl.'s Br.") at 2. In addition, the Court can only locate Madrid's application for SSI in the transcript of the record on appeal. (*See* Tr. 86-92.) Consequently, the Court will only review Madrid's claim for SSI benefits.

[2] In his application, Madrid claimed that his disability began on February 1, 2004. (*See, e.g.,* Tr. 86.) However, at the hearing before the ALJ, Madrid amended his alleged onset of disability date to October 1, 2007. (Tr. 26.)

1

After his application for benefits was denied initially and on reconsideration, Madrid requested a hearing before an ALJ. (Tr. 13, 48-52, 56-60.)  The ALJ held a hearing on May 6, 2009, and issued an unfavorable decision on September 28, 2009. (Tr. 10-45.)  On September 7, 2012, the Appeals Council denied Madrid's request for review,[3] leaving the ALJ's decision as the final decision of the Commissioner in his case. (Tr. 1–6.)  Madrid subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA and numerous regulatory provisions.  *See* 20 C.F.R. Pt. 416.  To determine whether a claimant is disabled, and thus entitled to benefits, a five-step analysis is employed.   20 C.F.R. § 416.920(a)(4).   First, the claimant must not be presently working at any substantial gainful activity.  *Id.* § 416.920(b).  "Substantial gainful activity" is defined as work activity "that involves doing significant physical or mental activities . . . for pay or profit." *Id.* § 416.972. Second, the claimant must have an impairment or combination of impairments that is severe.  *Id.* § 461.920(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).   Third, disability will be found if the impairment or combination of impairments meets or equals an impairment contained in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1.  20 C.F.R. § 416.920(d).  Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work.   *Id.* § 416.920(f).   And fifth, the impairment must prevent the claimant from doing any work,

---

[3] Apparently, the Appeals Council originally denied Madrid's request for review on June 30, 2011. (Tr. 1.) In its September 7, 2012 Notice of Appeals Council Action, the Appeals Council said that it was "setting aside [its] earlier action to consider additional information." (*Id.*)  The Appeals Council then stated that, after reviewing the additional information, it was once again denying Madrid's request for review as it had "found no reason under [its] rules to review the [ALJ's] decision." (Tr. 1.)

considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 416.920(g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999).

Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant can still do notwithstanding her physical and mental limitations. 20 C.F.R. § 416.920(a)(4). The claimant's RFC is used at both the fourth and fifth steps of the sequential analysis. Id. § 416.920(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. Id. § 416.920(e). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* § 416.920(e). At steps one through four, the burden of proof rests upon the claimant to show that she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to

determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*,

837 F.2d at 1383.

### III.  ISSUES

In his brief, Madrid presents the following issues:

1.  Whether the ALJ applied the proper legal standard at Step Two in evaluating Madrid's severe impairments;

2.  Whether the ALJ properly considered all of Madrid's severe impairments at Step Two; and

3.  Whether the ALJ's determination at Step Four that Madrid could perform his past relevant work is supported by substantial evidence.

(Plaintiff's Brief ("Pl.'s Br.") at 1.)[4]

### IV.  ALJ DECISION

In his September 28, 2009 decision, the ALJ found that Madrid had not engaged in any

substantial gainful activity since October 1, 2007, the alleged date of Madrid's onset of his

disability.  (Tr. 15.)  The ALJ further found that Madrid suffered from the following severe

impairments: "history of multiple trauma, back surgeries x2, right shoulder arthroscopy, and left

knee arthroscopy, osteoarthritis, and depression."  (Tr. 15.)  Next, the ALJ held that none of

Madrid's impairments, or combination of impairments, met or equaled the severity of any

impairments in the Listing.  (Tr. 15, 19.)  As to Madrid's RFC, the ALJ stated:

> The claimant has the [RFC] to perform light work as defined in 20 CFR [§] 416.967(b) that does not require any overhead work with the left arm.  He is able to occasionally climb, kneel, crouch, and crawl.  He is able to understand, remember, and carry out simple tasks.

---

[4] Plaintiff set forth and analyzed the above issues in his brief in a different order.  For ease of analysis, the Court has changed the order as set forth above.

(Tr. 19 (emphasis omitted).)  Next, the ALJ found that Madrid was able to perform his past relevant work as a parking lot attendant. (Tr. 21-22.)  Consequently, the ALJ concluded that Madrid was not disabled.  (*Id.*)

## V.  DISCUSSION

### A.  <u>Step Two Issues</u>

As to Step Two, Madrid first complains that the ALJ applied the incorrect legal standard in evaluating his impairments. (Pl.'s Br. at 7-9.)  Specifically, Madrid argues that the ALJ erred in failing to cite the severity standard set forth in *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).  (*Id.*)  To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at Step Two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *cf. id.* § 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").  The Fifth Circuit, however, has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the SSA.  *See Stone*, 752 F.2d at 1104–05.  Instead, the Fifth Circuit has established the following standard for determining whether a claimant's impairment is severe: An impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101 (emphasis added).

In this case, in setting forth the law regarding the sequential disability evaluation, the ALJ stated the following:

> At step two, I must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is

5

"severe."  (20 CFR 416.920(c)).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 416.921); Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p).  If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled.  If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

(Tr. 14.)

In this case, Madrid is correct in that the ALJ did not recite the *Stone* standard or cite to *Stone* in his discussion of the severity of Madrid's impairments.  In *Stone*, the Fifth Circuit stated that it would assume that the ALJ had applied an incorrect standard to the severity requirement unless the correct standard was either set forth by reference to *Stone* or expressly stated in the decision.  752 F.2d at 1106.  The Fifth Circuit stated that, "[u]nless the correct standard is used, the claim must be remanded to the Secretary for reconsideration." *Id.*

However, procedural perfection is not required unless it affects the substantial rights of a party.  *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).  In 2012, the Fifth Circuit published an opinion clarifying that even if the ALJ errs in failing to follow the procedures set out in *Stone*, such error does not require remand unless the claimant is harmed by the error. *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012).  Under *Taylor*, therefore, a *Stone* error no longer requires automatic remand but instead is subject to a harmless-error analysis.  *See id.* Thus, the Court's analysis turns to the second issue, which is whether the ALJ's determination at Step Two is supported by substantial evidence.

In his second issue, Madrid argues that the ALJ's failure to find that his impairments of borderline intellectual functioning and obesity were severe is not supported by substantial

evidence.  (Pl.'s Br. at 3-5.)   The Court will first evaluate the impairment of borderline intellectual functioning.  As to this impairment, Madrid claims the "ALJ failed to express any opinion as to the diagnosis [of borderline intellectual functioning], nor did he indicate why borderline intellectual functioning was not a significant factor in this case."  (Pl.'s Br. at 4; *see* Pl.'s Br. at 3-5.)

As stated above, the ALJ found at Step Two, *inter alia*, that Madrid suffered from the severe mental impairment of depression.  In making such a determination, the ALJ relied, *inter alia*, on the following evidence in the record: (1) December 2007 treatment records indicating that Madrid was depressed but was not taking any prescription medications (Tr. 16; *see* Tr. 203); (2) February 2008 treatment records from Mental Health Mental Retardation of Tarrant Count ("MHMR") in which Madrid was (a) diagnosed with severe, recurrent major depressive disorder without psychotic patterns, (b) started on medication, and (c) given a Global Assessment of Functioning ("GAF")[5] score of 45 (Tr. 17, 278-79, 282); (3) evidence that Madrid began counseling sessions with Jennifer D'Souza, LPC ("Ms. D'Souza"), in April 2008 (Tr. 17; *see* tr. 300-04); (4) the fact that Madrid missed several MHMR appointments (Tr. 17); (5) examination notes from an August 5, 2008 exam at MHMR indicating that Madrid was overly friendly and egocentric, began to cry, jumped from one extreme mood to another, had been non-compliant with having his lab work done, ran out of medication again, and was given a GAF score of 41 (Tr. 17; *see* Tr. 259); (6) a Medical Source Statement dated in April 2009 in which Ms. D'Souza opined, *inter alia*, that Madrid had the extreme loss of ability[6] (a) to complete a normal work

---

[5] A GAF score is a standard measurement of an individual's overall functioning level with respect to psychological, social, and occupational functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994) (DSM–IV).  A GAF score between 41 and 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. DSM–IV at 34.

[6] The rating specifically stated, "Extreme loss of ability to perform the named activity; could do so only to meet basic needs at home at best."  (Tr. 284.)

week without interruptions from psychologically based symptoms and to perform at a consistent

pace without an unreasonable number and length of rest periods and (b) to cope with normal

work stresses without exacerbating psychologically based symptoms[7] (Tr. 17; *see* Tr. 284-86; (7)

a consultative exam dated May 27, 2009 in which George Mount, Ph.D. ("Dr. Mount")

diagnosed Madrid with recurrent, severe major depressive disorder without psychotic features

and borderline intellectual functioning and assessed a GAF score of 45 (Tr. 18; *see* Tr. 311-15);

and (8) a Wechsler Adult Intelligence Scale-III test ("WAIS-III") administered by Dr. Mount

(Tr. 18; *see* Tr. 313-14.[8]  In addition, the ALJ considered a "Medical Source Statement of Ability

---

[7] Ms. D'Souza also opined that Madrid was not totally precluded from performing the following activities, but the degree of limitation was such as to interfere seriously with Madrid's ability to function independently, appropriately, effectively, and on a sustained basis: (1) the ability to apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and to deal with problems involving several concrete variables in or from standardized solutions; (2) the ability to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and to deal with problems involving a few concrete variables in or from standardized situations; (3) the ability to apply commonsense understanding to carry out simple one- or two-step instructions and to deal with standardized situations with occasional or no variables in or from these situations encountered on the job; (4) the ability to maintain attention and concentration for extended periods (approximately 2 hour intervals); (5) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (6) the ability to sustain ordinary routine without special supervision; (7) the ability to work in coordination with or proximity to others without being unduly distracted by them; (8) the ability to interact appropriately with the general public; (9) the ability to ask simple questions or request assistance; (10) the ability to accept instructions and respond appropriately to criticism from supervisors; (11) the ability to get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; and (12) the ability to respond appropriately to changes in a routine work setting.  (Tr. 17, 284-85.)  In addition, Ms. Souza opined that Madrid experienced some loss of the ability to carry out very short and simple instructions but was still capable of consistently performing it independently, appropriately, effectively, and on a sustained basis.  In support of her explanation of her assessment, Ms. Souza stated:

> Mr. Madrid has been depressed.  Most of his sessions, he has been tearful.  And restless. He was unable to sit still for an hour or even 15 min[utes] due [to] increasing pain. . . . Often reports passive suicidal thoughts.  He reports getting unduly angry and frustrated due to his inability to do any tasks, inability to provide for family financially.

(Tr. 285; *see* Tr. 17.)

[8] In the WAIS-III, Madrid scored a Verbal IQ ("VIQ") score of 85, a Performance IQ ("PIQ") score of 78, and a Full Scale IQ (FSIQ") score of 80.  (Tr. 313.)  In interpreting the results, Dr. Mount stated:

> VIQ is a low average.  PIQ and FSIQ were in the borderline range.

> His work knowledge and language development was at the bottom of the average (7-13) range.  His ability to handle simple reasoning, form generalizations and use verbal concepts was slightly impaired.  His verbal math skills and computational abilities were low average.  His ability to attend to and concentrate on verbally presented numbers was average and he was able to recall 6 digits forward and to reverse sequence 4 digits.  His fund of general knowledge and

To Do Work-Related Activities (Mental)" also dated May 27, 2009 in which Dr. Mount opined

that Madrid was moderately impaired in his ability to (1) understand, remember, carry out simple

instructions and (2) make judgments on simple work-related decisions.  (Tr. 18, 316.)  In

addition, Dr. Mount opined that Madrid was markedly impaired in his ability to (1) understand,

remember, and carry out complex instructions, (2) make judgments on complex work-related

decisions, and (3) respond appropriately to usual work situations and to changes in a routine

work setting.  (Tr. 18, 316-17.)  Furthermore, Dr. Mount found Madrid was moderately to

markedly impaired in his ability to interact appropriately with the public, supervisors, and co-

workers.  (Tr. 18, 317.)

    In analyzing Madrid's mental impairments, the ALJ, *inter alia*, stated:

> The claimant's mental impairment does not meet or medically equal the criteria of listing 12.04.  In making this finding, I have considered whether the "paragraph B" criteria are satisfied. . . .

> In activities of daily living, the claimant has mild difficulties.  In social functioning, the claimant has mild difficulties.  With regard to concentration, persistence or pace, the claimant has marked difficulties.  As for episodes of decomposition, the claimant has experienced no episodes of decompensation, which have been of extended duration.

> . . . .

---

information was at the bottom of the average.  His verbal social judgment and practical reasoning were low average.

    His ability to attend, concentrate, avoid distractions and discriminate essential from nonessential detail was moderately impaired.  His visual motor efficiency was in the severely impaired range.  This score may be attributed to various factors such as difficulty with attending, learning a new task and reacting under at [sic] time pressure.  His spatial (nonverbal) perception and nonverbal conceptualization was average.  His visual abstract reasoning skills, which requires [sic] classification, analogy, serialization, fluid thinking and simultaneous processing[,] were low average.  His awareness of common social consequences and sequences and thus "social intelligence" was average.

(Tr. 313-14; *see* Tr. 18.)

I also find his testimony with respect to his depression to be exaggerated. MHMR records note Mr. Madrid has not been consistent in taking his anti-depressant medication.

. . . .

I also considered the opinion evidence of both Ms. D'Souza and Dr. Mount as well as the representative's response to proffer of Dr. Mount's findings on examination. I note MHMR's records that indicate Mr. Madrid was not consistently taking his medication. Nor was he compliant with his labs. He missed several appointments. While in treatment at MHMR his presentation during the course of a single day varied depending on the person he was interfacing with. The opinions expressed by Ms. D'Souza and Dr. Mount suggest an individual who is unemployable; however, this is not consistent with the therapy notes or findings on mental status examination. Therefore, I have given these opinions no weight. I find the residual functional capacity as outlined above more than adequately addresses Mr. Madrid's limitations imposed by his depression.

(Tr. 19, 21.)

Based on the foregoing, it is clear that the ALJ was aware of and considered Dr. Mount's diagnosis of borderline intellectual functioning in his decision. (*See, e.g.*, Tr. 18.) Based on all the evidence in the record, however, the ALJ determined, at least implicitly, that borderline intellectual functioning was not a severe impairment. While the ALJ may have erred in not discussing his reasons for doing so, any error is harmless for several reasons. *See Murrell v. Colvin*, No. 3:12-CV-3757-G (BN), 2013 WL 4623549, at *5 (N.D. Tex. Aug. 29, 2013) ("[E]ven if the ALJ's determination that Plaintiff's borderline intellectual functioning was not a severe impairment was error, Plaintiff cannot show the prejudice required for remand."). First, Madrid has not presented any *non-conclusory* or *non-speculative* evidence showing how his borderline intellectual functioning impacted his ability to work. *See Martinez v. Astrue*, No. 2:10-CV-0102, 2011 WL 4128837, at *9 (N.D. Tex. Sept. 9, 2011). The mere presence or diagnosis of some impairment is not disabling per se. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).

Moreover, the ALJ did include a limitation in the mental RFC determination limiting Madrid to jobs that required him to understand, remember, and carry out simple tasks. Such a limitation appears to incorporate any limitations associated with his borderline intellectual functioning. *See Murrell*, 2013 WL 46523549, at *5 ("The ALJ's limitation that Plaintiff perform 'simple and routine' work can only plausibly be based on his borderline intellectual functioning."); *Caradine v. Astrue*, No. 1:08-CV-305, 2009 WL 3769771, at *3 n.9 (N.D. Miss. Nov. 10, 2009) (stating that Plaintiff was unable to show prejudice at Step 2 when the ALJ found that plaintiff suffered from severe borderline intellectual functioning instead of mild mental retardation in light of the ALJ's ultimate finding that plaintiff should be limited to only sedentary work with simple instructions and gradual changes). Consequently, remand is not required as to this issue.

As to the issue of obesity, Madrid argues, citing to Social Security Ruling ("SSR") 02-1p, that the ALJ, after recognizing that he was obese, failed to "comment upon his obesity or determine its impact, if any, upon, his ability to perform work-related activities." (Pl.'s Br. at 5.) The Social Security rulings recognize that obesity, though not a listed impairment, can reduce an individual's occupational base for work activity in combination with other ailments. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.00(Q); SSR 02-1p, 2000 WL 628049, at *5-7 (S.S.A. Sept. 12, 2002). A claimant's obesity must be considered at all steps of the sequential evaluation process. SSR 02-1p at *3. The ALJ must perform an "individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." *Id.* at *4.

In this case, as to obesity, the ALJ stated:

> The claimant continued to receive treatment at the John Peter Smith clinic in 2008. . . . He was also noted to be obese . . . .

. . . .

> Following the hearing I sent the claimant for a consultative psychological examination. The examination was performed on May 27, 2009 by George R. Mount, Ph.D. . . . He had gained 20 pounds in the past 6 months. . . .

(Tr. 16, 18 (internal citations omitted).)

While it is true that the ALJ did not specifically analyze Madrid's obesity, Madrid does not point to any evidence in the record indicating that his alleged obesity caused any work-related limitations beyond those already found by the ALJ in his RFC determination, which included limiting Madrid to, *inter alia*, light work with only occasionally climbing, kneeling, crouching, and crawling. *See Lewis v. U.S. Comm'r Soc. Sec. Admin.*, No. 07-CV-1617, 2008 WL 5459741, at *2 (W.D. La. Dec. 1, 2008) (affirming when claimant raised the lack of specific discussion of obesity but did not identify any obesity-causing limitation that was not considered by the ALJ). Consequently, even assuming that the ALJ erred in specifically discussing Madrid's obesity pursuant to SSR 02-1p, any such error is harmless. *See Vaughn v. Astrue*, No. 3:08-CV-1920-L, 2009 WL 3874607, at *5 (N.D. Tex. Nov. 17, 2009) ("At most, his failure to specifically refer to Plaintiff's obesity in his decision is harmless error, and 'error consisting of violation of a *Regulation* may be disregarded when a reviewing court concludes it is harmless.'") Thus, remand is not required.

Based on the foregoing, the Court concludes that the ALJ's failure to cite to *Stone* or the *Stone* severity standard did not affect Madrid's substantial rights, so Madrid was not harmed by the error. *See Taylor*, 2012 WL 6965181, at *2; *Mays*, 837 F.2d at 1364. Here, substantial evidence supports the ALJ's implicit finding that Madrid's borderline intellectual functioning and obesity were not severe. Based on the evidence in the record as set forth above, the Court concludes that substantial evidence supports the ALJ's severity determination. Madrid was

required to show that he was so functionally impaired by his borderline intellectual functioning and obesity that he was precluded from engaging in substantial gainful activity. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). He fails to do so, and any error by the ALJ in not following the procedures set out in *Stone* is harmless. *See Taylor*, 706 F.3d at 603.[9]

### B.  Step Four and Past Relevant Work

Madrid also argues that the ALJ's determination at Step Four that Madrid can perform his past relevant work is inconsistent with the medical and vocational evidence. (Pl.'s Br. at 9-13.) Specifically, Madrid claims that the ALJ's finding that Madrid has a marked limitation in concentration, persistence, or pace is not consistent with the VE's testimony that "such degree of interference would preclude performance of Plaintiff's past relevant work" as a parking lot attendant. (Pl.'s Br. at 10.) In addition, Madrid argues that "the ALJ's [RFC] determination that Plaintiff is limited to 'simple' work fails to adequately incorporate marked limitations in concentration, persistence and pace." (Pl.'s Br. at 10.) Furthermore, Madrid claims that, pursuant to section 14.00D(8) of Appendix 1,[10] an individual that has a marked limitation in concentration, persistence, or pace, cannot perform even simple work. (Pl.'s Br. at 11.) Finally, Madrid argues that the ALJ erred in failing to "obtain vocational input as to the impact of a marked limitation in concentration, persistence, or pace upon Plaintiff's ability to perform work-related activities" and that the ALJ's hypo to the VE did "not specifically incorporate the

---

[9] The Court notes that Madrid, in his reply brief, raises several new issues, including that the ALJ failed to consider the factors set forth in 20 C.F.R. § 416.927(d) prior to giving Dr. D'Souza's opinions less weight. (Plaintiff's Reply ("Pl.'s Reply") at 3-4.) The Court, however, will not consider issues raised for the first time in Madrid's reply brief. *See, e.g., Butler v. Soc. Sec. Admin.*, 146 F. App'x 752, 753 (5th Cir. 2005) ("[T]his court does not consider issues raised for the first time in a reply brief."); *Lewis v. Astrue*, No. 2:09-CV-26-SSA, 2010 WL 2243288, at *6 n.9 (N.D. Miss. June 1, 2010).

[10] The Court notes that Madrid refers to "section 14.00D(8) of Appendix 1" in both his brief and reply. (*See* Pl.'s Br. at 11 and Pl.'s Reply at 5.) The Court cannot locate such section in Pt. 404, Subpt. P, App. 1 of Title 20 of the Code of Federal Regulations. It appears that Madrid meant to refer to section 12.00C.3. in Pt. 404, Subpt. P, App. 1 of Title 20.

limitations found under the four broad functional areas considered under 20 C.F.R. § 404.1520a." (Pl.'s Br. at 12.)

Federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants, which is known as the "special technique." *See* 20 C.F.R. § 416.920a. In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 416.920a(b)(1). To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. § 416.920a(b)(1); *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). For most Listings, the regulations require the ALJ to evaluate the degree of functional limitation resulting from the claimant's mental impairments pursuant to criteria identified in paragraphs A, B, and sometimes C, of the adult mental disorders contained in the Listings. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 416.920a(b)(2) & (c).[11] "Paragraph B" contains four broad functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace;[12] and 4) episodes of decompensation. 20 C.F.R. § 416.920a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C.[13] The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

---

[11] This applies to all adult mental disorders in the Listings except Listings 12.05 and 12.09. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.

[12] The category of concentration, persistence or pace "refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Part 404, Subpart P., App. 1, § 12.00C(3).

[13] The degree of limitation in the first three functional areas is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme. 20 C.F.R. § 416.920a(c)(4). The degree of the fourth functional area is rated on a four-point scale which includes none, one or two, three, and four or more. *Id.* These four functional areas are known as the paragraph "B" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C.

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. § 416.920a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment is not severe at Step Two of the sequential evaluation process, which generally concludes the analysis and terminates the proceedings. 20 C.F.R. § 416.920a(d)(1). If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine at Step Three if it meets or equals a listed mental disorder of the Listing. 20 C.F.R. § 416.920a(d)(2).[14] To determine if it meets or is equivalent in severity to a listed mental disorder, the ALJ must compare the medical findings about the claimant's impairment and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. 20 C.F.R. § 416.920a(d)(2). If the impairment is severe but does not meet or equal a listed mental impairment, then the ALJ must conduct an RFC assessment. 20 C.F.R. § 416.920a(d)(3); *see Boyd*, 239 F.3d at 705.

In this case, as set forth above, the ALJ found in his evaluation of Madrid's mental impairments that Madrid suffered from the severe impairment of depression. In his "Paragraph B" analysis under the special technique, the ALJ further found that Madrid had (1) mild difficulties in social functioning and performing activities of daily living; (2) marked[15] difficulties with regard to maintaining concentration, persistence or pace; and (3) no episodes of decompensation. (Tr. 19.) Based on the evidence in the record, the ALJ then found that such

---

[14] A claimant will be found to have a listed impairment "if the diagnostic description in the introductory paragraph [of the Listing] and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied." 20 C.F.R. Pt. 4, Subpt. P, App. 1 § 12.00A. "The criteria in paragraph A substantiate medically the presence of a particular mental disorder." *Id.* "The criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity." *Id.*

[15] "Marked" in the context of limitations in activities of daily living, maintaining social functioning and maintaining concentration, persistence or pace means "more than moderate, but less than extreme." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C).

limitations were incorporated into the mental RFC determination as a limitation to performing jobs that required Madrid to understand, remember, and carry out simple tasks. (Tr. 19.)

As to Madrid's claims that, in essence, the ALJ's RFC determination that Madrid is limited to "simple" work fails to adequately incorporate the marked limitations in concentration, persistence and pace that the ALJ had found earlier, the Court notes that the responsibility for determining the RFC falls to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995*).* The paragraph B criteria limitation of having a marked limitation in maintaining concentration, persistence, and pace that the ALJ found following the "special technique" is not an RFC assessment. SSR 96-8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996). Instead, it is used to rate the severity of Madrid's mental impairments at Steps 2 and 3 of the sequential evaluation process. Id. "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 of the Listing of Impairments." *Id.* "While the regulations require the ALJ to evaluate[] the limitations imposed by Plaintiff's mental impairments in certain areas and direct the ALJ to proceed to the RFC determination if Plaintiff's impairments are found severe, the regulations do not specifically require the ALJ to find that the limitations found in evaluating the mental impairment must be word-for-word incorporated into either the RFC determination or the hypothetical question posed to the VE." *Patterson v. Astrue*, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009).

Based on the facts in this case, the ALJ's mental RFC determination limiting Madrid to the performance of simple job tasks is not inherently contradictory with the ALJ's finding in the "special technique" that Madrid was markedly limited in his ability to maintain concentration,

persistence, or pace as such a limitation would not preclude him from performing the "simple" requirements of his past previous work as a parking lot attendant. *See Jackson v. Astrue*, No. 4:11-CV-028-Y, 2011 WL 4943547, at *8 (N.D. Tex. Aug. 23, 2011) (concluding that a claimant's marked limitation in concentration, persistence, and pace was not inherently contradictory with the finding that he was able to perform work involving only simple tasks), *adopted in* 2011 WL 4940998 (N.D. Tex. Oct 17, 2011); *Anderson v. Astrue,* No. 09–0971–TC, 2011 WL 1655552, at *3 (D. Or. Mar. 25, 2011) ("Moderate, and even marked limitations in the ability to maintain attention, concentration, persistence or pace are compatible with the ability to perform unskilled jobs involving simple tasks.").[16] The ALJ properly discussed the evidence in the record in making the RFC determination, explained the reasoning for the RFC determination, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into the RFC assessment that were most supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

Once the ALJ has made the RFC determination, the ALJ moves on to Step 4 of the disability analysis. When determining at Step Four whether the claimant could perform her past relevant work, the ALJ is permitted to consult a VE. *See, e.g., Adams v. Astrue*, No. 08-0135, 2009 WL 774845, at *7 (W.D. La. Mar. 24, 2009) ("At Step Four of the sequential evaluation

---

[16] *See also Bordelon v. Astrue*, 281 F. App'x 418, 423 (5th Cir. 2008) (finding restriction to rare public interaction, low stress, and one-to-two step instructions reflect that ALJ has reasonably incorporated the Plaintiff's moderate concentration, persistence, and pace limitations); *De La Rosa v. Astrue*, No. EP-10-CV-351-RPM, 2012 WL 1078782, at *14-15 (W.D. Tex. Mar. 30, 2012) (holding that the ALJ's finding that claimant had moderate limitation in concentration, persistence, and pace was properly accounted for in an RFC determination that claimant was, *inter alia*, able to understand, remember, and carry out detailed but not complex instructions, make decisions, and attend and concentrate for extended periods. *But see Eastham v. Comm'r of Soc. Sec. Admin.*, No. 3:10-CV-2001-L, 2012 WL 691893, at *8 (N.D. Tex. Feb. 17, 2012) ("The Court finds the Commissioner's contention that the phrase 'simple, repetitive work' encompasses difficulties with concentration, persistence, or pace is not persuasive."), *adopted in* 2012 WL 696756 (N.D. Tex. Mar. 5, 2012) (Lindsay, J.); *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) (finding that claimant's impairment in concentration, persistence, or pace was not accommodated by limitation to simple tasks in the hypothetical to the vocational expert because it did not account for deficiencies in pace); *Owen v. Astrue*, No. 3:10-CV-1439-BH, 2011 WL 588048, at *14 (N.D. Tex. Feb. 9, 2011) ("As determined by several courts, a finding that Plaintiff can perform unskilled work is fatally flawed where the ALJ has found Plaintiff to have moderate limitations in concentration, persistence, or pace.")

process, the ALJ employed a vocational expert ("VE") to find that [the claimant] was able to return to her past relevant work."); *Pierce v. Astrue*, No. 07-1294, 2008 WL 4373036, at *13 (E.D. La. Sept. 22, 2008) ("Although a vocational expert is not required to make a step 4 determination, an ALJ may utilize such expert testimony.")  "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Vaughan*, 58 F.3d at 132.  At step 4, the claimant bears the burden of showing that she cannot perform her past relevant work. *See Leggett*, 67 F.3d at 564.

SSR 82-62 requires that when the ALJ has determined that a claimant retains the RFC to perform a past relevant job, the decision must contain the following specific findings: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job or occupation; and (3) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation.  SSR 82-62, 1982 WL 31386, at *4 (S.S.A. 1982).  When determining whether a claimant retains the RFC to perform her past relevant work, the ALJ can look to either (1) the job duties peculiar to an individual job as the claimant actually performed it or (2) the functional demands and job duties of the occupation as generally required by employees throughout the national economy.  SSR 82-61, 1982 WL 31387, at *1–2 (S.S.A. 1982).

In this case, the VE testified, *inter alia*, that Madrid could perform his past relevant work as a parking lot attendant,[17] which was light, unskilled work with a specific vocational

---

[17] The Court notes that Madrid indicated in an undated "Disability Report-Field Office" that his past job as a parking lot attendant required him to "watch[] the lot and [make] sure all cars had a ticket." (Tr. 108.)  In addition, Madrid testified at the hearing before the ALJ that he seldomly had to park cars at this job and, after the manager saw him having trouble getting in and out of the cars, the manager had him checking meters and then sitting in the garage and letting cars come in.  (Tr. 29.)

preparation ("SVP")[18] of 2.  (Tr. 21; *see* Tr. 42.)  The ALJ based his decision at Step Four that Madrid could perform his past relevant work on the VE's testimony.  (Tr. 21-22.)  The ALJ incorporated Madrid's functional limitations of having marked difficulties in concentration, persistence, and pace into limitations in the RFC such that Madrid was limited to simple job tasks.  Such a limitation does not appear to preclude Madrid from performing the "simple" requirements of his previous work as a parking lot attendant.[19]

As to Madrid's claim that the ALJ also failed to incorporate Madrid's marked limitation in maintaining concentration, persistence, and pace in the hypothetical to the VE, the Court notes that the hypothetical question posed to the vocational expert must reasonably incorporate all of the disabilities recognized by the ALJ's RFC assessment, and the claimant or his representative must be afforded the opportunity to correct any deficiencies in the ALJ's question.  *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).  If the ALJ's hypothetical fails to incorporate all such functional limitations, the ALJ's determination is not supported by substantial evidence.  *Id.*

---

[18] According to the Dictionary of Occupational Titles ("DOT"), the occupation of parking-lot attendant requires, as noted by the VE, a specific vocational preparation ("SVP") level of 2 and also has a reasoning development level ("RDL") of 2.  DOT § 915.473-010 (4th ed., rev. 1991).  The SVP level refers to the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a particular occupation. *See* DOT at App. C.  Level 2 is in the class of unskilled work, *see* SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000), and is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time," *see* 20 C.F.R. §, 416.968(a). A reasoning development level of two requires a person to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variable in or from standardized situations."  DOT at App. C.

[19] Furthermore, a job that requires an RDL of two is not necessarily inconsistent with the ability to perform only simple, routine work tasks. *See, e.g., Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 613–14 (E.D. Tex. 2009); *Gaspard v. Soc. Sec. Admin. Comm'r*, 609 F. Supp. 2d 607, 617 (E.D. Tex. 2009); *Dugas v. Astrue*, No. 1:07-CV-605, 2009 WL 1780121, at *6 (E.D. Tex. June 22, 2009) ("A limitation of performing 1–2 step instructions in a simple, routine work environment does not necessarily preclude the ability to perform jobs with reasoning levels of 2 or 3.") (internal citations omitted); *Adams*, 2008 WL 2812835, at *3 ("As several courts have held, reasoning level two requires the worker to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations, and appears consistent with residual functional capacity to perform simple, routine work tasks.").

In the series of hypothetical questions that the ALJ asked the VE, the ALJ included all such limitations that he had found in the RFC determination. (Tr. 43.) The VE testified that an individual limited to such work could perform his past relevant job as a parking lot attendant. In other words, the ALJ relied on the VE's testimony that specifically related to the functional limitations that the ALJ actually **found** in his RFC assessment. Although the ALJ asked the VE questions that contained additional limitations, the ALJ ultimately did not find that Madrid suffered from such limitations and did not include such limitations in the final RFC determination. (Tr. 43.) Because, as stated above, the ALJ's RFC determination was supported by substantial evidence and the ALJ's hypothetical to the VE "tracked" the RFC assessment, the ALJ did not commit error. *See Berry v. Astrue*, No. 3:11-CV-02817-L (BH), 2013 WL 524331, at *23 (N.D. Tex. Jan. 25, 2013), *adopted in* 2013 WL 540587 (N.D. Tex. Feb. 13, 2013) (Lindsay, J.); *Gipson v. Astrue,* No. 3:10-CV-1413-BK, 2011 WL 540299, at *6–7 (N.D. Tex. Feb. 11, 2011) (holding that hypothetical reasonably incorporated disabilities found by ALJ because question closely tracked ALJ's RFC assessment, which took into consideration all impairments). Consequently, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only

make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **December 2, 2013**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED November 18, 2013.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

21